Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Austin J. Richardson (SBN 319807)
ajr@smlavvocati.com
**SML AVVOCATI P.C.**
4640 Cass Street #90142
San Diego, CA 92019
Tel:   949.636.1391

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **APPLIED BIOLOGICAL LABORATORIES, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **DIOMICS CORPORATION**, a Delaware corporation; **ANTHONY ZOLEZZI**, an individual, and DOES 1-50, inclusive, <br><br> Defendants. | Case No. 3:20-cv-02500-AJB-LL <br><br> **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, FOR MORE DEFINITE STATEMENT; MEMORANDUM IN SUPPORT** <br><br> Date:  May 6, 2021 <br> Time:  2:00 p.m. <br> Ctrm:  4A <br><br> Honorable Anthony J. Battaglia |

COMES NOW Defendant Diomics Corporation ("Diomics") and Defendant Anthony Zolezzi ("Zolezzi," together with Diomics, "Defendants") and pursuant to Federal Rule of Civil Procedure 12(b)(6) move to dismiss Plaintiff Applied Biological Laboratories, Inc.'s ("ABL") Complaint for failure to state a claim. In the alternative, Defendants also respectfully request that the Court order ABL to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

## INTRODUCTION

Diomics is a leading biotechnology company focused on science-based innovation and the development of life-improving products, including materials that improve the speed, sensitivity, and accuracy in the capture and detection of nucleic acids and proteins. Based on its patented Diomat™ technology, Diomics' work has applicability in several nanoscale settings in biomedical engineering, genomics, and stem cell research.

Zolezzi, a serial entrepreneur, became the Chief Executive Officer of Diomics in March 2020. He was formerly the Chief Executive Officer of Twinlab Consolidation Corporation and an advisor with Pegasus Capital Advisors LP ("Pegasus"), a private equity fund manager.

Using its own technology, and in response to the pandemic, Diomics endeavored to create an antiviral nasal spray that would capture, bind, and neutralize the SARS-CoV-2 virus before it could reach and enter cells that cause infection. In September 2020, Diomics issued a press release announcing the development of its Dioguard™ antiviral nasal spray and is presently seeking authorization from FDA to accelerate human trials of its Dioguard™ product.

Over two years ago, while Zolezzi was still an advisor there, ABL had sought funding from Pegasus in connection with the development of its antiviral nasal spray technology. Pegasus, however, declined to invest in ABL, and the parties ended all communications in 2018—well before the onset of the pandemic.

Now, many years later, rather than prevail in the marketplace, ABL has asserted paper-thin allegations of trade secret misappropriation against Diomics and Zolezzi. But as explained below, ABL fails to offer anything except mere circumstantial evidence in support of its claims. Indeed, ABL cannot specifically identify *what* Diomics and Zolezzi are alleged to have misappropriated; nor can ABL specifically identify *how* Diomics and Zolezzi are alleged to have actually used those trade secrets.

ABL's claims therefore amount to little more than an anticompetitive fishing expedition, and the Court should dismiss ABL's trade secret claims (Counts I and II). The Court should also dismiss Count III of ABL's Complaint for statutory unfair competition under California Bus. & Prof. Code § 17200. This claim is based on the exact same set of facts that are alleged to support ABL's trade secret claims, and Count III is therefore preempted by the California Uniform Trade Secrets Act. Lastly, and in the alternative only, the Court should order ABL to provide a more definite statement of its trade secret claims and to further separate its allegations into more discrete paragraphs to comply with the Federal Rules' pleading standards.

## SUMMARY OF ABL'S FACTUAL ALLEGATIONS IN SUPPORT OF MISAPPROPRIATION CLAIMS

The set up for ABL's Complaint is straightforward. As alleged by ABL, in the course of seeking an investment in 2017 and 2018, ABL had made available to Pegasus some 90 highly confidential and proprietary files related to ABL's alleged trade secrets. (Compl. ¶ 5.) According to ABL, these files included a detailed business plan, ABL's scientific results, experimental designs, patent documents, formulations, manufacturing processes, and marketing strategies. (Compl. ¶¶ 5, 27.)

Because Zolezzi was an advisor at Pegasus at that time, ABL alleges that Zolezzi was "extensively involved" in the process of exploring business opportunities with ABL (Compl. ¶ 25), and on this basis ABL "believes" that Zolezzi must have "then improperly disclosed" ABL's trade secrets to Diomics (Compl. ¶ 5). According to ABL, Defendants' alleged misappropriation allowed Defendants to "avoid incurring the risk, time, and expense of independently developing their own technology." (Compl. ¶ 1.)

Yet although ABL's wordy complaint may tell a story, it does not allege misappropriation with anywhere near the specificity required under the Federal Rules of Civil Procedure. To the contrary, ABL's allegations of misappropriation are entirely circumstantial in nature. Indeed, these allegations explicitly center on Diomics' September 2020 press release announcing an antiviral nasal spray that, according to ABL, "bears a striking resemblance" to ABL's products. (Compl. ¶ 4.) As a result, and as noted above, ABL merely alleges that it "believes" that Zolezzi misappropriated ABL's trade secrets and "then improperly disclosed" those trade secrets to Diomics. (Compl. ¶ 5.)

The specific facts that ABL alleges in support of this "belief" can be found in Paragraphs 32 through 35 of the Complaint. But in those paragraphs, ABL marshals (at best) only mere circumstantial allegations of misappropriation. For example, ABL first alleges that, before March 2020, Diomics' business was focused on producing products unrelated to antiviral nasal sprays. (Compl. ¶ 32.) ABL thus alleges that, although the parties "ceased discussing business opportunities in 2018" (Compl. ¶ 31), Diomics and Zolezzi were nevertheless "secretly preparing to launch a competing antiviral nasal spray product" using ABL's trade secrets. (Compl. ¶ 32.)

Next, ABL summarizes the press release from Diomics that was issued on September 8, 2020, in which Diomics announced its DioGuard™ nasal spray that has as its goal the creation of a durable barrier of antibodies to capture, bind, and neutralize the SARS-CoV-2 virus before it causes infection. (Compl. ¶ 33.) ABL then alleges that by this time, Diomics had "revamped" its website to claim a new market focus. (Compl. ¶ 34.)

It is then in Paragraph 35 that ABL makes the circumstantial nature of its allegations all too clear:

> Diomics (*sic*) sudden development and quick public launch of DioGuard™, as well as its transition into an entirely new product market,

within a matter of months of hiring Zolezzi all caused [ABL] grave concern regarding the possible misuse of its intellectual property.

(Compl. ¶ 35.) ABL then concludes its allegations of misappropriation by stating that it has "investigated the events surrounding Zolezzi's acquisition of [ABL's] intellectual property, Diomics' hiring of Zolezzi, and Diomics' development of DioGuard™." (Compl. ¶ 35.) Notably, ABL does not allege what results, if any, came from its alleged investigation. Regardless, it is on the basis of these facts alleged in Paragraphs 32 through 35 that ABL bases its trade secrets claims (Count I under the Defend Trade Secrets Act ["DTSA"] and Count II under the California Uniform Trade Secret Act ["CUTSA"]) against Diomics and Zolezzi and asserts in conclusory fashion that Diomics and Zolezzi "misappropriated" ABL's trade secrets. (Comp. ¶¶ 49, 59.)

As explained below, these circumstantial allegations of misappropriations fall far short of the specificity standard required under the Federal Rules. In addition, ABL cannot or does not specify *which* alleged trade secrets Defendants are alleged to have misappropriated. Instead, ABL seems to allege that Defendants misappropriated *all* of ABL's alleged trade secrets. (Compl. ¶¶ 27, 41.) This too is insufficient to identify ABL's alleged trade secrets with particularity.

## ARGUMENT

### I. Legal Standard To Plead Misappropriation Under DTSA

To plead a trade secret misappropriation cause of action under the DTSA, a plaintiff must allege the following: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Power Integrations, Inc. v. De Lara*, No. 20-CV-410-MMA (DEB), 2020 WL 4582675, at *10 (S.D. Cal. Aug. 10, 2020).

In doing so, a DTSA plaintiff must satisfy the plausibility standards under Rule 8. *See id.* at *9. Threadbare recitals of the elements of a DTSA claim are therefore plainly insufficient. *See, e.g., Navigation Holdings, LLC v. Molavi*, No. 19-CV-

02644-LHK, 2020 WL 5074307, at *5 (N.D. Cal. Aug. 25, 2020); *Knights Armament Co. v. Optical Systems Tech., Inc.*, 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008) (dismissing trade secret counterclaim under *Twombly* because claimant failed to provide details on how counterclaim-defendants "allegedly used the trade secrets").

Although a plaintiff's trade secrets need not be disclosed in detail in the complaint, "courts generally require sufficient pleading such that the other party is on notice of what it is alleged to have been misappropriated." *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1043-44 (S.D. Cal. 2017) (quoting *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, 780 F. Supp. 2d 1061, 1078 (D. Haw. 2011)). In addition, because courts may not presume the transfer of trade secrets merely where a party possesses it,[1] a plaintiff "must satisfy its pleading burden by showing how improper acquisition, disclosure, or use occurred or is threatened." *See Power Integrations*, 2020 WL 4582675, at *19 (citing *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1027 (E.D. Cal. 2011)). Therefore, where a claimant "fails to allege what, if any, misappropriated trade secrets [a defendant] used," dismissal is warranted. *See Physician's Surrogacy, Inc. v. German*, No. 17CV0718-MMA (WVG), 2017 WL 3622329, at *9 (S.D. Cal. Aug. 23, 2017) (dismissing DTSA claim with leave to amend).

As such, though a complaint may rely on "circumstantial allegations of a defendant's misappropriation," courts "must strike a balance between that reality and the fair notice Rule 8 requires." *See Yeiser*, 281 F. Supp. 2d at 1048 (citing *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 662 (D. Del.

---

[1] "State and federal courts in California have held that a plaintiff must prove more than a defendant's mere possession of trade secrets." *Power Integrations*, 2020 WL 4582675, at *12 (citing *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012); *Cent. Valley Gen. Hosp. v. Smith*, 75 Cal. Rptr. 3d 771, 792 (Ct. App. 2008)). Likewise, California's courts do not recognize the "inevitable disclosure doctrine." *See SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536-MWF (ASX), 2019 WL 1974902, at *13 (C.D. Cal. Mar. 11, 2019) (collecting cases).

2008)). Thus, a court "will not permit a plaintiff 'to conduct a fishing expedition based upon . . . bare allegations' of misappropriation." *See id.* (quoting *Accenture*, 581 F. Supp. 2d at 663). For example, in *Accenture*, a plaintiff's trade secret claim was dismissed, because the plaintiff had failed to allege how the defendant had used the trade secrets in developing its products; rather, the plaintiff had merely alleged only that the defendant "'seemed to' develop its products 'surprisingly quickly.'" *See id.* at 663-64. As further support for its ruling, the *Accenture* court observed that "allegations of similarity, without more, do not support a claim of misappropriation of trade secrets." *See id.* n. 13 (quoting *Brown v. Adidas*, 938 F. Supp. 628, 634 (S.D. Cal. 1996)).

Other courts have likewise ruled that such circumstantial allegations are insufficient to permit an inference that a defendant has acquired, disclosed, or used a plaintiff's trade secret information. *See MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, No. SACV19220JVSJDEX, 2019 WL 4282906, at *9 (C.D. Cal. June 3, 2019) (dismissing DTSA and CUTSA claims without prejudice for failure to specifically plead misappropriation). For example, in *MACOM*, the Court rejected conclusory allegations that failed to allege "how the misappropriation occurred, when it occurred, and what was misappropriated." *See id.* Thus, in that case, the "mere allegation that [an employee] left Plaintiffs' employ for a competitor who also sells [similar] products" was "insufficient." *See id.*

**II.   Because Its Circumstantial Allegations Of Misappropriation Are Insufficient, ABL's Trade Secret Claims Should Be Dismissed.**

As summarized above, ABL's allegations in support of its trade secrets claims (Counts I and II) are circumstantial at best, and in view of the case law cited above, wholly insufficient. ABL's circumstantial allegations are on all fours with the types of deficient circumstantial evidence rejected by other courts. *See Accenture*, 581 F. Supp. 2d at 663; *MACOM*, 2019 WL 4282906, at *9. Like in *Accenture*, ABL bases

its allegations of misappropriation on what it believes to be a "surprisingly quick" product launch from Diomics. (*See* Compl. ¶ 35.) And like in *MACOM*, ABL seeks an inference that Zolezzi's move from Pegasus in 2018 to Diomics in 2020, coupled with Diomics announcement of an antiviral nasal spray, equate to evidence of misappropriation. (*See* Compl. ¶ 35; Ex. A (Sept. 8, 2020 press release).)

But absent from any of these circumstantial allegations is anything that specifically alleges *which* trade secrets were misappropriated, *when* they were misappropriated, or *how* those trade secrets were used in developing Diomics' new product. *See Yeiser*, 281 F. Supp. at 1048 (ruling that a court should not "permit a plaintiff to conduct a fishing expedition based upon . . . bare allegations of misappropriation.") (internal quotations omitted). Therefore, because ABL "fails to allege what, if any, misappropriated trade secrets [Diomics] *used*," dismissal is warranted. *Physician's Surrogacy,* 2017 WL 3622329, at *9 (emphasis added); *see also MACOM,* 2019 WL 4282906, at *3, 9 (dismissing both DTSA and CUTSA claims under a single analysis).

### III.  ABL's Count III Should Also Be Dismissed, Because It Is Preempted By The CUTSA.

ABL's Count III should also be dismissed because it is preempted by the California Uniform Trade Secrets Act. Cal. Civil C. § 3426, *et seq*. Specifically, California courts have held that "[a] claim for common law or even statutory unfair competition may be preempted under [§ 3426.7 of the CUTSA] if it relies on the same facts as the misappropriation claim." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc*., 171 Cal. App. 4th 939, 961, 90 Cal. Rptr. 3d 247, 263 (2009). This is because CUTSA "provides an exclusive remedy," and it therefore "displaces claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *Erhart v. BofI Holding, Inc*., No. 15-CV-02287-BAS-NLS, 2020

WL 1550207, at *36 (S.D. Cal. Mar. 31, 2020) (quoting *K.C. Multimedia*, 171 Cal. App. at 958)).

Otherwise, a plaintiff could make a "transparent attempt to evade the strictures of CUTSA by restating a trade secret claim as something else." *See id.* (quoting *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236, 109 Cal.Rptr.3d 27 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011)). Thus, under California law, where a "statutory unfair competition claim rests squarely on [the] factual allegations of trade secret misappropriation," the claim is preempted. *See K.C. Multimedia*, 171 Cal. App. at 962; *Anokiwave, Inc. v. Rebeiz*, No. 18-CV-629 JLS (MDD), 2018 WL 4407591, at *2 (S.D. Cal. Sept. 17, 2018) ("If there is no material distinction between the wrongdoing alleged . . . the CUTSA claim preempts the other claim.") (quoting *Convolve, Inc. v. Compaq Comp. Corp.*, No. 00 CV 5141 (GBD), 2006 WL 839022, at *6 (S.D.N.Y. Mar. 31, 2006) (applying California law)).

That is precisely the case here. ABL's statutory unfair competition claim (Count III) "rests squarely" on ABL's allegations of trade secret misappropriation. *See K.C. Multimedia*, 171 Cal. App. at 962. In fact, there are *no* specific facts alleged in support of Count III *other than* ABL's allegations of trade secret misappropriation. (*See* Compl. ¶ 64 (incorporating all prior allegations).) As a result, the only other allegations offered in support of Count III are the conclusory allegations that Diomics and Zolezzi engaged in unfair competition by "misappropriating [ABL's] confidential and proprietary information" (Compl. ¶ 65) and by "us[ing] [ABL's] confidential and proprietary trade secret information through material misrepresentations and omissions." (Compl. ¶ 67.) Count III is therefore a "transparent attempt to evade the strictures of the CUTSA," and is plainly preempted. *See Erhart*, 2020 WL 1550207,

at *36.[2]  It should therefore be dismissed.  *See Anokiwave,* 2018 WL 4407591, at *8 (dismissing statutory unfair competition claim as preempted under the CUTSA).

### IV. In The Alternative, The Court Should Order ABL To Provide A More Definite Statement Of Its Claims.

"[A] trade secrets plaintiff must sufficiently identify its alleged trade secrets in order to proceed to discovery." *Yeiser Research & Dev., LLC v. Teknor Apex Co.*, No. 17-CV-1290-BAS-MSB, 2019 WL 2177658, at *1 (S.D. Cal. May 20, 2019); *see also Resonance Tech., Inc. v. Koninklijke Philips Elecs.*, N.V., No. CV 08-2580 PSG (PLAX), 2008 WL 4330288, at *4 (C.D. Cal. Sept. 17, 2008) (ordering plaintiff to file amended complaint that indicates "what information, aside from its patented technology, that Defendants have allegedly misappropriated").  Therefore, as noted at the outset, "courts generally require sufficient pleading such that the other party is on notice of what it is alleged to have been misappropriated." *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1043-44 (S.D. Cal. 2017) (quoting *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, 780 F. Supp. 2d 1061, 1078 (D. Haw. 2011)).

For these reasons, "the party alleging the misappropriation shall identify the trade secret with reasonable particularity." *Rovince Int'l Corp. v. Preston*, No. CV 13-3527 CAS PJWX, 2013 WL 5539430, at *7 (C.D. Cal. Oct. 7, 2013) (quoting Cal.

---

[2] To be clear, Plaintiff's reference to unspecified "confidential and proprietary information" in Paragraphs 65 and 67 of the Complaint does not avoid the dismissal of Count III for preemption.  This "confidential and proprietary information" is simply a veiled reference to ABL's alleged trade secrets and therefore should not change the Court's analysis.  But in any event, the "CUTSA displaces 'all claims premised on the wrongful taking and use of confidential business and proprietary information, even if that information does not meet the statutory definition of a trade secret.'" *Erhart*, 2020 WL 1550207, at *37 (quoting *ChromaDex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019)).  Indeed, "[i]t would defeat the purpose of CUTSA to allow [a claimant] to maintain claims based on these allegations." *See id.* (citing *Silvaco*, 184 Ca. App. 4th at 29 n.22)).  So, either way, Count III runs headlong into preemption under the CUTSA.

Code Civ. P. § 2019.210).³ As a result, where a complaint contains (for example) an "encyclopedic list" of alleged trade secrets, the complaint has failed to identify the trade secret with reasonable particularity. *See id.* (granting petition for more definite statement as to trade secret claim).

Separately, a motion for a more definite statement will also ordinarily be granted where a pleading is "unintelligible" such that a defendant "cannot reasonably prepare a response." *Warner v. CBRE, Inc.*, No. 13-CV-80055, 2013 WL 12084301, at *3 (S.D. Fla. Dec. 11, 2013) (quoting Fed. R. Civ. P. 12(e)). A complaint may therefore be deficient where it "fails to separate allegations and facts into distinct, separate paragraphs." *See id.* (citing *Politico v. Promus Hotels, Inc.*, 184 F.R.D. 232, 234 (E.D.N.Y. 1999) (ordering plaintiff to re-plead, stating that "as much as possible," a complaint should "avoid multiple allegations per paragraph")).

So where a complaint's paragraphs span pages or contain "narratives setting forth multiple allegations which do not appear to be related," a court may order a plaintiff to amend its complaint to set the allegations out in "separate, numbered paragraphs in accordance with Rule 10(b) and 8(a)(2)." *Yufa v. Lighthouse Worldwide Sols., Inc.*, No. C 09-00968-MEJ, 2009 WL 1690511, at *2 (N.D. Cal. June 16, 2009) (granting motion for more definite statement). Otherwise, where a complaint is "riddled with multiple allegations per paragraph," preparing a responsive answer can become "virtually impossible." *See Warner*, 2013 WL 12084301, at *3 (requiring plaintiff to file amended complaint).

---

³ As explained in *Rovince*, the application of § 2019.210 is appropriate in federal court. *See also Gabriel Techs. Corp. v. Qualcomm Inc.*, 2012 WL 849167 (S.D. Cal. March 13, 2012) (applying *Erie* and *Hanna* to find that § 2019.210 should be applied because it does not conflict with any federal rule and avoids undesirable forum shopping).

Here, ABL's Complaint fails both of these tests, and therefore a more definite statement is appropriate. Apart from providing a broad list categories ABL provided to Pegasus in 2018 (Compl. ¶ 27), ABL altogether fails to identify which specific trade secret or trade secrets Defendants are alleged to have misappropriated. *See Rovince Int'l Corp.*, 2013 WL 5539430, at *7; *see also MACOM*, 2019 WL 4282906, at *9 ("Plaintiffs do not allege which trade secrets were purportedly used . . . ."). ABL has therefore failed to plead its alleged trade secrets with particularity, and Defendants respectfully ask that the Court order ABL to provide a more definite statement of its claims pursuant to Rule 12(e). *See Rovince*, 2013 WL 5539430, at *7. Otherwise, Defendants will be unable to frame a responsive pleading, given the fact that they are not on notice of what specifically they are alleged to have misappropriated. *See id.*

On the other hand, ABL has failed to sufficiently separate the allegations in its Complaint into separate and distinct numbered paragraphs. *See Warner*, 2013 WL 12084301, at *3. Instead, ABL's Complaint consists of lengthy narrative paragraphs that often extend the length of an entire half page. (*See* Compl. ¶¶ 1-3, 16, 26-27, 29-30, 41-42, 54-55.) Therefore, because these paragraphs contain multiple allegations (often unrelated), preparing a responsive pleading is likely to be extremely burdensome if not "virtually impossible." *See Warner*, 2013 WL 12084301, at *3. For this reason, too, the Court should order ABL to re-plead its Complaint to comply with Rules 10(b) and 8(a)(2). *See id.*

## CONCLUSION

ABL's circumstantial allegations of misappropriation are insufficient, and the Court should dismiss Counts I and II for failure to state a claim. And because ABL's statutory unfair competition claim is premised on its allegations of trade secret misappropriation, the Court also should dismiss ABL's Count III as preempted under CUTSA. Lastly, and in the alternative, because ABL has failed to specify which trade secrets Defendants are alleged to have misappropriated, the Court should order ABL

to provide a more definite statement of its trade secrets claim.  ABL should also be ordered to re-plead its complaint so as to comply with Rules 10(b) and 8(a)(2).

Respectfully submitted,

Dated:  March 5, 2021               **SML Avvocati P.C.**

By:   /s/ Stephen M. Lobbin
       Attorneys for Defendants

Kevin M. Bell
*Pro Hac Vice Motion Pending*
Richard J. Oparil
*Pro Hac Vice Motion Pending*

ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
(202) 677-4030

Andrew C. Stevens
*Pro Hac Vice Motion Pending*
ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363
(404) 873-8734

# **PROOF OF SERVICE**

I hereby certify that on March 5, 2021, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants, and via e-mail.

Dated:  March 5, 2021                    /s/ Stephen M. Lobbin